**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Proposed Counsel for Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| JOHN'S FAMILY INC. | Case No: 22-17234 (SLM) |
| Debtor. | |

**DECLARATION OF KUN H. KWAK aka JOHN KENNY KWAK IN SUPPORT OF CHAPTER 11 FILING AND FIRST DAY MATTERS**

**KUN H. KWAK,** of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1. I am the 100% shareholder of the John's Family Inc., the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case. I am fully familiar with the facts and circumstances set forth herein.

2. I submit this declaration (the "**Declaration**") in support of the Debtor's voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and the relief the Debtor has requested from the Court in various motions and applications filed contemporaneously herewith (the "**First-Day Pleadings**"). The relief sought in each of the First-Day Pleadings is (1) necessary to enable the Debtor to operate its properties (described herein) with minimal disruption to its operations without loss of value; and (2) best serves the interests of the Debtor's estate, creditors, and other parties in interest.

3. Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge, information learned from my review of relevant documents, including financial information, or my opinion based upon my experience and knowledge of operations and financial condition. This Declaration is intended to provide my background, the reasons for the chapter 11 filing, my objectives in the chapter 11 process, and a summary of the relief sought in each of the First-Day Pleadings.

4. If called as a witness, I would testify to the best of my knowledge to the facts set forth in this Declaration. Unless otherwise indicated, all financial information set forth in this Declaration is presented on an unaudited basis.

**Background**

5. The Debtor's registered office is located at 48 Bi-State Plaza, #233, Old Tappan, New Jersey 07675.

6. The Debtor is a single asset real estate corporation. The Debtor owns five commercial properties: (i) 164 University Avenue, Newark, New Jersey; (ii) 162 University Avenue, Newark, New Jersey; (iii) 160 University Avenue, Newark, New Jersey; (iv) 156-158 University Avenue, Newark, New Jersey; and (v) 53-55 Bleeker Street, Newark, New Jersey (collectively, the "Properties").

7. Pre-petition, the Properties were in the possession and control of a rent receiver, namely Philip J. Lange (the "Rent Receiver"), with a business address at Equity 3 LLC, 40 Eisenhower Drive, Paramus, New Jersey for the benefit of 100 Mile Northeast, LLC and 100 Mile Fund, LLC (collectively, "100 Mile" or the "Lender").

8. Pre-petition I did attempt to settle with the Lender.

9. The Debtor plans to sell or refinance the Properties within a set time limit (either consensual with the Lender or an outside date of six (6) months). Also, the Debtor would agree to pay interest-only adequate protection payments.

10. The Lender had a sheriff sale for the Properties scheduled for September 13, 2022, at 1:30 p.m.

11. The Properties are insured.

### CIRCUMSTANCES LEADING TO BANKRUPTCY

12. The Lender filed a complaint in foreclosure against amongst others and the Debtor. The complaint was filed in the Superior Court of New Jersey, Chancery Division, Essex County, bearing Docket No. F-016684-19, on October 11, 2019 (the "Complaint").

13. The basis for the Complaint relates to two loans that the Lender made to the Debtor in the amount of $3,660,000 and $150,000.

14. On January 24, 2020, an order appointing the Rent Receiver was entered.

15. On January 19, 2021, the court entered an uncontested order for final judgment.

16. On January 20, 2021, the court entered a foreclosure writ notice.

17. The sheriff sale for the Properties was originally scheduled for November 30, 2021, however, due numerous adjournments, was eventually scheduled for September 13, 2022.

18. The Debtor filed for bankruptcy protection to avoid the sheriff sale of the Properties.

## CAPITAL STRUCTURE

### Secured Debt

A. **Secured Debt**

19. As outlined above, 100 Mile is the secured creditor.

**$3,660,000 Loan**

20. The Debtor executed and delivered to the Lender a note in the principal amount of $3,660,000, payable beginning on September 1, 2017, and on the first day of each and every month thereafter until the first day of August 2018, with interest payments in arrears based on an annual rate equal to 12%.

21. The entire unpaid principal amount of $3,660,000 was due and payable on August 11, 2018.

22. To secure payment of the Note, the Debtor executed and delivered a Commercial Mortgage and Security Agreement in favor of the Lender. The mortgage was recorded on August 17, 2017, in Essex County.

23. In connection with the mortgage, the Lender filed a Notice of Settlement giving notice of a contact of sale and/or mortgage commitment between the Debtor and the Lender. The mortgage encumbers the Properties.

24. The mortgage includes a security agreement in favor of the Lender, its successors and assigns, creating a security interest in any of the personal property or fixtures. The Lender filed a UCC financing statement on August 17, 2017.

25. To further secure the Note, the Debtor executed and delivered an Assignment of Rents and Leases in favor of the Lender. I also executed a guaranty to the Lender for the prompt and unconditional payment of $3,660,000 and interest.

**$150,000 Loan**

26. On or about January 9, 2018, the Lender made a loan to the Debtor in the principal amount of $150,000.

27. The Debtor executed and delivered to the Lender a note in the amount of $150,000.

28. The Debtor executed and delivered a Commercial Mortgage and Security Agreement in favor of the Lender in the amount of $150,000.

29. The $150,000 mortgage encumbers the Properties.

30. On January 9, 2018, the Debtor executed and delivered a Reserve Agreement in favor of the Lender. The unfunded Reserve Agreement was in the sum of $50,000. Upon default, the Lender, may apply any sums then present in the Reserve Account to the payment of sums owed under the $150,000 note.

31. I also executed a guaranty to the Lender to pay the prompt and unconditional payment of $150,000 and interest.

32. On March 27, 2019, the Debtor executed and delivered to Lender a Note and Mortgage Modification and Extension Agreement (the "Modification"). The Modification outlined the terms of the increased principal.

33. The $3,660,000 Note, $3,660,000 Mortgage, Assignment of Rents, $3,660,000 Notice of Settlement, County UCC-1, State UCC-1, $3,660,000 Guaranty, Environmental Agreement, $150,000 Note, $150,000 Mortgage, Reserve Agreement, $150,000 Guaranty, Forbearance Agreement, March 7, 2019, Notice of Settlement, Modification, and all related loan documents shall be referred to collectively herein as the "Loan Documents."

**Default**

34. The Loan Documents provide that if Borrower fails to pay in full when due any amounts due under the terms of the Loan Documents, such failure shall constitute an event of default.

35. The Loan Documents further provide that upon the occurrence of an event of default, the holder of the $3,660,000 Mortgage and the $150,000 Mortgage (jointly, the "Mortgages") shall be entitled to collect the rents and profits from the Mortgaged Property or to have a receiver appointed to take possession of the property and to collect the rents and profits therefrom.

36. The Loan Documents further provide that upon an event of default, Borrower shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

37. The Debtor defaulted under the Loan Documents.

38. By letter dated July 9, 2019, Plaintiffs accelerated all sums due and owing under the Loan Documents.

39. There is due, owing and payable to Plaintiffs under the Loan Documents: (i) $3,890,047.63 in principal; and (ii) accrued and unpaid interest under the Notes and Mortgages.

**B. Unsecured Debt**

40. The Debtor owes monies to the Internal Revenue Service and PSE&G. The Debtor has a claim against University Newark QOZB, LLC ("University Newark") and its members for breach of a previous sale agreement of the Properties. The Debtor is analyzing the claims and will set forth such creditors when all schedules are filed.

41. On or about November 23, 2021, University Newark filed a complaint in the Superior Court of New Jersey, Law Division, Essex County against me and the Debtor for, amongst other things, a recission of a stock sale agreement.

C. **Proposal to Secured Lender**

42. In the present matter, the Rent Receiver is charged with collecting rents, however, upon information and belief, the Rent Receiver has failed to collect rents from all tenants nor has the Rent Receiver started collection actions. In addition, the tenants are obligated pay for the utility accounts to PSE&G as per the lease agreements. Upon information and belief utility bills remain unpaid.

D. **Adequate Protection**

43. In the present matter, the Lender will be adequately protected during the pendency of the Debtor's bankruptcy case. The Debtor proposes to pay interest only to the Lender for the Properties.

44. The Debtor asserts that the Properties are worth in excess of $8.6 million according to a December 2021 appraisal prepared by Helix Real Estate, Inc. ("Helix"). The Lender is owed approximately $6.5 million.

45. The Debtor also has an appraisal from StarMark Appraisals dated October 3, 2019, reflecting a value of $8.5 million. Lastly, Helix appraised the Properties for $39,000,000 based on a development of the Properties. The resulting land value reflects a site with all approvals or entitlements for development by governing authorities and assumes the site is vacant.

46. The Properties will continue to be well-maintained.

47. All revenues will be used in connection with a budget. The Rent Receiver maintains the financial information, therefore, a budget will be provided shortly. However, the Debtor proposes paying the interest only for the Properties.

48. A denial of the use of alleged cash collateral to fund the Debtor's Properties will severely harm the Debtor at a critical time, effectively hindering its ability to reorganize. Essentially, without the authority to use cash collateral, the Debtor cannot continue to function, which will cause a loss of going concern value and preclude the ability to reorganize.

## THE DEBTOR'S CHAPTER 11 FILING

49. The Debtor filed the voluntary Chapter 11 petition on September 13, 2022. The Debtor intends to continue operating the Properties.

## REORGANIZATION PURPOSE

50. The Debtor seeks to refinance or sell the Properties. In fact, the Debtor hopes to consummate a sale shortly. The Debtor proposes to pay unsecured creditors in full and administrative creditors will be paid in full.

## FIRST-DAY MOTIONS

51. Concurrently with the filing of its chapter 11 petition, the Debtor filed certain motions and proposed orders (collectively, the "**First-Day Orders**"). The Debtor requests this Court enter each of the First-Day Orders described below, as each is critical to the Debtor's achieving successful results in its chapter 11 case for the benefit of all parties-in-interest.

**A. Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies from Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to Have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366**

52. The Debtor seeks entry of (i) an Interim Order, and (ii) a Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the utility companies from

discontinuing, altering or refusing service to, except as set forth herein, (b) deeming the utility companies adequately assured of future performance on the basis of payment of a two-week security deposit, and (c) establishing procedures for resolving requests for additional assurance of payment.

53. Uninterrupted utility services are essential to the Debtor's ongoing business operations and, therefore, to the success of the Debtor's chapter 11 efforts. Indeed, any disruption to the Debtors' properties by virtue of the cessation of utility services by the utility companies will bring the Debtor's Properties to a halt.

54. In accordance with Bankruptcy Code section 366(c)(1)(A), the Debtor proposes to provide additional assurance of payment to each utility company. Specifically, the Debtor proposes to issue a security deposit equal to approximately two weeks' estimated average utility consumption to each utility company.

**B. Motion for Authority to Continue to Use Existing Bank Accounts and Business Forms Pursuant to 11 U.S.C. §§ 105(a) and 363(c)**

55. Currently, the Debtor has a bank account with TD Bank (the "**Bank Account**"). In the ordinary course of the Debtor operating, the Debtor receives deposits and issues checks, wire transfers and ACH transfers into and out of the Bank Account.

56. The Debtor also seeks authority to continue to use its prepetition business forms including, but not limited to, letterhead, invoices, checks, *et cetera* (collectively, the "Business Forms"), without reference to the status as debtor-in-possession. Requiring the Debtor to immediately print new Business Forms would be burdensome, expensive, and disruptive. The Debtor will, however, either print or stamp "Debtor-in-Possession" on its checks, and when he replaces stock, will obtain checks marked "Debtor-in-Possession."

### C. Motion for an Order Authorizing the Interim and Final Use of Cash Collateral

57. The Debtor seeks an order authorizing the interim and final use of Cash Collateral and submits further that the Lender will not be harmed by the use of the Cash Collateral because the Lender will receive adequate protection payments throughout the course of the bankruptcy. Cash Collateral would be used solely in accordance with a budget to be provided shortly. Moreover, the Debtor will continue to maintain the Properties in prominent shape. Moreover, the Properties enjoy equity above the secured debt.

58. Use of cash collateral is imperative as the Lender has mortgages on the Debtor's Properties. Without the use of cash, the Debtor will be unable to operate and pay the mortgages on its Properties.

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

/s/ Kun H. Kwak<br>
KUN H. KWAK

Dated: September 28, 2022